SUMMARY ORDER
Plaintiff-appellant Albert Togut, as trustee for the Estate of 52 Park LLC (“52 Park”), appeals from the judgment of the district court affirming the bankruptcy court’s grant of summary judgment in favor of defendant-appellee Miri Holding Inc. (“Miri”) and dismissing 52 Park’s adversary proceeding, which sought damages and reformation of a contract for 52 Park’s purchase of an apartment building on the ground that Miri, the seller, fraudulently misrepresented the interior dimensions of the building. The district court affirmed the bankruptcy court’s conclusion that because 52 Park had the opportunity to discover the truth underlying Miri’s alleged fraudulent misrepresentations concerning the building’s interior dimensions, such dimensions did not fall under the exception for material information that is “peculiarly within” the knowledge of the defendant that would negate the express disclaimers contained in the contract and other documents pertinent to the transaction. See Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 600 (N.Y.1959). As does the district court, we review the bankruptcy court’s findings of fact for clear error and its conclusions of law de novo. See Fed. R. Bankr.P. 8013; Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 597 (2d Cir.1991).
On appeal, 52 Park argues primarily that it could not have ascertained the building’s interior dimensions prior to entering the contract because of the severe time constraints imposed on 52 Park between the date its bid on the property was accepted and the date — three days later — that the contract was executed. 52 Park asserts that because of these time constraints, it justifiably relied on the misrepresentations it received from *382 Miri. This argument has no merit given that the bidding process was initiated no later than June 16, 1998, more than a month before the contract was executed, when 52 Park’s predecessor-in-interest entered into a confidentiality agreement with Miri and was given an “Offering Memorandum” that contained the alleged misrepresentations. Both of these documents expressly disclaimed the accuracy of the information contained in the Offering Memorandum. The Confidentiality Agreement stated that the Offering Memorandum was “prepared solely to assist a potential buyer ... to determine whether they wish to proceed with an in-depth investigation of the property.” This language was repeated almost verbatim in the Offering Memorandum itself, which further stated that “the information contained herein ... is not guaranteed as to accuracy, nor does it constitute a warranty or representation as to accuracy or completeness.” 52 Park acknowledges that it had the opportunity to inspect the building before its bid was accepted, but asserts that “there was no immediate urgency ... to conduct a physical inspection of the Property” because of the “auction type setting” of the transaction. That 52 Park, or its predecessor-in-interest, faded to either inspect the property before bidding on it or to negotiate the inclusion of a clause in the contract making its performance contingent upon a satisfactory inspection — which is standard in property transactions — simply demonstrates poor business practices and does not render 52 Park’s reliance on the alleged misrepresentations justifiable.
Accordingly, for substantially the reasons stated in the district and bankruptcy courts’ opinions, the judgment of the district court is hereby AFFIRMED.